**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

IRINA CHAMBERLAIN,

        Plaintiff,

                              Case No. 1:09-cv-751

    v.

                              Weber, J.
                              Litkovitz, M.J.

CONSOLIDATED LEARNING
CENTERS, INC.,

        Defendant.

## REPORT AND RECOMMENDATION[1] THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 21) BE DENIED IN PART AND GRANTED IN PART.

This matter is before the Court on defendant Consolidated Learning Center, Inc.'s Motion

for Summary Judgment (Doc. 21), plaintiff Irina Chamberlain's opposing memorandum (Doc.

33), and defendant's reply memorandum (Doc. 47). Defendant has filed proposed findings of

fact and conclusions of law, which plaintiff has highlighted as true, false, or irrelevant (Doc. 46).

Oral argument on the motion was held on November 19, 2010.

### I. Introduction

Plaintiff brings this action pursuant to the Court's original jurisdiction under Title VII of

the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000, et seq., the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and the Americans with Disabilities Act

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

("ADA"), as amended, 42 U.S.C. § 12101, et seq. Plaintiff also brings state law claims for discrimination, defamation and breach of Ohio public policy under the Court's supplemental jurisdiction, 28 U.S.C. § 1367.[2] Plaintiff's complaint alleges that she is a Russian-born immigrant who was born in 1966; she was fully-qualified for her position at all times; and defendant discriminated against her on account of her national origin, age and gender by treating her less favorably than similarly-situated American employees, younger employees, and male employees and by terminating her on these bases. Plaintiff further alleges that she became disabled at work; she is a qualified individual with a disability who is perceived as disabled as defined under the ADA; and defendant discriminated against her because it perceived her as disabled by treating her less favorably than similarly-situated, non-disabled employees and by terminating her employment on account of her disability. In support of her claim for breach of Ohio public policy, plaintiff alleges that defendant violated the Ohio public policy prohibiting discrimination and/or retaliation against employees who complain to state officials about potential child abuse and/or who participate in investigations of such allegations.

    As relief, plaintiff seeks lost earnings and benefits; compensatory damages; punitive damages; a permanent injunction to prevent defendant from engaging in any further unlawful behavior towards her; and attorney fees, costs, and interest.

## II. Facts

    The parties agree on the following facts, except where they are designated as allegations:

1.    Plaintiff was born in 1966 in Moscow, Russia. She arrived in the United States in November 1996 and is now a permanent United States citizen.

---

[2]Plaintiff has elected not to challenge dismissal of her defamation claim. *See* Doc. 33, p. 1 n.1.

2.     Plaintiff holds a B.S. and M.S. in psychology.  She has experience teaching special needs and "delayed" students.  She had worked as a substitute teacher and instructional aide for a Cincinnati public elementary school.

3.     Plaintiff began her employment with defendant's Jelly Bean Junction ("JBJ") facility in Mt. Carmel, Ohio, in August 2006 as a teacher's assistant.  JBJ is an Ohio corporation with its principal place of business in Ohio.

4.     At the time of her termination, plaintiff was a lead teacher in a pre-kindergarten classroom.

5.     Defendant's Chairman of the Board is Jeffrey Roby and its President is Jeffrey Roby's wife, Bonnie Roby.

6.     Dianna Moore is Vice-President of Operations for JBJ.  She oversees all of JBJ's facilities in Columbus and Cincinnati.

7.     Kathy Tincher is the Director of the JBJ facility in Mt. Carmel.

8.     Rusty Ayers is a classroom specialist who assisted in the development of the educational and classroom programs at JBJ.  Ayers was born in 1980.

9.     In April 2007, plaintiff accused Ayers of physically abusing her nine-year-old son Michael, whom she had enrolled at the JBJ facility in Mt. Carmel.  She notified the police, 241-KIDS and JBJ of her allegations against Ayers.

10.    Plaintiff took photographs of a bruise on Michael's neck the night of the alleged abuse incident.  The following day, she questioned the children in Michael's classroom about what had happened.

11.    Plaintiff decided not to pursue a formal complaint with the police against Ayers, and the

3

241-KIDS investigation was eventually closed. JBJ did not take any action against Ayers.

12. On July 9, 2008, an incident involving plaintiff and a student occurred in plaintiff's classroom. The teacher's assistant assigned to plaintiff's classroom, Garnisha Sanford, was present during the incident. The parties disagree as to exactly what occurred.

13. Defendant makes the following allegations regarding the incident: A boy in plaintiff's classroom pushed a girl in the stomach, causing her to cry. Sanford consoled the girl while plaintiff addressed the boy. Plaintiff asked him to apologize to the girl, but he refused. Plaintiff took him by the hand and started leading him to the office. As they were walking toward the classroom door, the boy attempted to jerk away from plaintiff and landed on the floor, causing plaintiff to fall towards him. She braced herself to avoid landing on him. Tincher and Ayers, who were in an adjacent office, heard the commotion and observed plaintiff, who looked very mad, attempting to push the child out of the classroom with her hands on his back. She pushed the child slightly into the lobby area, but he turned around and ran right back into the classroom.

14. Plaintiff makes the following allegations concerning the incident: After the boy refused to apologize for hitting the girl and making her cry, plaintiff took him by the hand to take him to the office. As she started to open the classroom door, he unexpectedly yanked his hand out of hers and sat on the floor with his legs crossed. Plaintiff lost her balance and started to fall, so she put her arm out to avoid falling on the boy. Consequently, she fell on her hand and injured it, experiencing significant pain. While the boy was sitting on the floor, Ayers came out and took him into the office. Plaintiff did not exert any force in directing the boy to the office and did not raise her voice with him. She was not upset

4

with him. Neither the boy nor the girl were hurt, there were no physical marks on the boy, and no incident report was generated.

15. Plaintiff continued teaching the rest of the day following the incident.

16. Plaintiff alleges that Sanford assumed most of the responsibility for the students that day because she could not move her hand. She claims that Tincher asked her how her hand was later that day when she came through the classroom and noticed Sanford leading most of the activities. Plaintiff allegedly responded that her hand still hurt, she could not move it, and she thought it might be broken.

17. Plaintiff alleges that about an hour after the incident, Ayers walked into her classroom with the boy, sat down on the floor with him, and for approximately 15 minutes posed questions to him which suggested the answers Ayers was looking for. For instance, when the boy denied he was hurt, Ayers told him he should be hurt if he had fallen on the floor.

18. Defendant alleges that the following occurred after the incident: After observing the incident, Tincher told plaintiff to come into the office to discuss what had happened. Plaintiff told Tincher she was trying to get the boy to go to the office, he fell to the floor and caused her to lose her balance, she landed on her right hand and bent her fingers back while attempting to avoid landing on the boy, and her hand hurt. Tincher also spoke to Sanford about what she had observed, and Sanford reported that she had not observed plaintiff pushing the boy out of the classroom and had only observed plaintiff get up off the floor. Tincher reported the incident to Vice-President of Operations Dianna Moore, who instructed Tincher to investigate the matter. Tincher and Ayers prepared an incident report, which Moore reviewed. Moore went to the Mt. Carmel facility the next day to

5

conduct her own investigation of the incident. As part of her investigation, she spoke with plaintiff, Tincher, Sanford and Ayers. She contacted Bonnie Roby to notify her of the incident and to discuss the appropriate course of action. Moore and Roby decided to suspend plaintiff pending further investigation and consideration.

19. Moore spoke with Tincher, Ayers and Sanford at the school the next day, July 10. She notified plaintiff that afternoon that she was suspended for three days.

20. Plaintiff alleges that Moore told her that she had put the boy at risk of harm by falling on him and that she was suspended for three days because of this accident.

21. The suspension document makes no mention of a pending investigation. It states that "any future incidences will result in termination." Doc. 26, Exh. 2.

22. Plaintiff alleges that she protested that her fall was an accident and she refused to sign the document suspending her. Plaintiff alleges that Moore did not claim at the suspension meeting that she had pushed the boy, and she did not hear about this as a basis for her termination until her unemployment hearing.

23. On July 14, 2008, Moore notified plaintiff of JBJ's decision to terminate her effective the following day for "inappropriate contact" with a child.

24. Plaintiff alleges that Moore admitted that nothing happened between July 10 and July 15 to make her decide to terminate plaintiff instead of suspending her. Plaintiff also alleges that when she asked why she was terminated, Moore told her that they did not have to give her a reason.

25. Because plaintiff did not want a termination to be on her record, she requested that JBJ allow her to resign, and Moore agreed. Plaintiff submitted a letter of resignation to

6

Tincher the next day.

26. JBJ did not send a letter out to the parents regarding the incident.

27. Plaintiff alleges that when she arrived at work the day after the incident involving the boy, her fingers were so swollen she could not move them. Plaintiff also claims that Tincher knew she had received medical treatment for her hand prior to the date she submitted her letter of resignation.

### III. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. The court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no genuine

7

issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return

a verdict for that party. *Id.* (citing *Cities Serv.*, 391 U.S. at 288-289). If the evidence is merely

colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 84 (1967), or is not significantly probative,

*Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

## IV. Motion for Summary Judgment

Defendant does not dispute that plaintiff is able to establish a prima facie case of national

origin discrimination. Nor does defendant dispute that plaintiff can meet the first three prongs of

a prima facie case of age and gender discrimination. Defendant argues, however, that plaintiff

cannot satisfy the fourth element of a prima facie case of age and gender discrimination, and she

cannot establish a prima facie case of disability discrimination because she is not disabled.

Defendant further argues that it terminated plaintiff for the legitimate reason that she had

inappropriate contact with a student at JBJ, and she cannot show that the reason for her

termination was a pretext for unlawful discrimination. Defendant also contends that plaintiff

cannot prove her public policy claim because there is no evidence to show that she was not fired

for inappropriate contact with a student. Defendant specifically claims there is no temporal

proximity which could establish a causal connection between her allegations against Ayers in

April of 2007 and her termination in July of 2008.

Plaintiff claims that she is able to establish a prima facie case of discrimination because

she was replaced by a native-born American and she was treated less favorably than a similarly-

situated male who was substantially younger than her. Plaintiff argues that she can establish she

is disabled by a wrist impairment that limits her ability to lift and that defendant terminated her

on account of her disability or because it perceived her to have a disability. She argues that she

8

can establish a genuine issue of material fact as to whether defendant's articulated reason for her termination is a pretext for discrimination. Plaintiff contends that a jury could find that the reason defendant has articulated for the termination decision has no basis in fact and was not the real motivation for the termination decision. Finally, plaintiff claims that she can establish her claim for breach of Ohio public policy by proving defendant terminated her in retaliation for reporting Ayers' alleged abuse of her son as required under Ohio law.

## V. Opinion

### A. National Origin, Gender and Age Discrimination Claims

### 1. Applicable Law

The same evidentiary framework applies to discrimination claims brought under Title VII, the ADEA and Ohio law. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). A plaintiff may establish a discrimination claim by either direct or circumstantial evidence. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.*

In an age discrimination case, whether a plaintiff seeks to prove her case by direct or circumstantial evidence, she has the burden of persuasion to demonstrate "that age was the 'but-for' cause of [her] employer's adverse action." *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009) (citing *Gross v. FBL Fin. Services, Inc.*, 129 S.Ct. 2343, 2351 n.4 (2009)).

Where a plaintiff seeks to establish her age discrimination claim by circumstantial evidence, the claim may be analyzed under the framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-804 (1973). *See Schoonmaker v. Spartan Graphics Leasing, LLC,* 595 F.3d 261, 264 n.2 (6th Cir. 2010) (citing *Geiger*, 579 F.3d at 622).

A plaintiff who lacks direct evidence of discrimination may establish a prima facie case of discrimination through circumstantial evidence by showing that: 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the position lost; and 4) she was replaced by an individual outside the protected class. *Mitchell,* 964 F.2d at 582. Plaintiff may also establish the fourth prong of a prima facie case of discrimination by showing that she was treated less favorably than a similarly-situated individual outside the protected class. *See Clayton v. Meijer, Inc.,* 281 F.3d 605, 610 (6th Cir. 2002). The fourth prong is modified for an age discrimination claim to require replacement by a "substantially" or "significantly" younger person, which may include an individual within the protected class. *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312-313 (1996); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). The Sixth Circuit in *Grosjean*, 349 F.3d at 340, established a bright-line rule that in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant. The Ohio Supreme Court has not adopted this rule and has instead held that whether an employee is substantially younger than another is best determined after considering the particular circumstances of each case. *Coryell v. Bank One Trust Co. N.A.,* 101 Ohio St.3d 175, 181, 803 N.E.2d 781, 788 (2004).

If the plaintiff seeks to establish that she was treated less favorably than a similarly-

situated individual, she must prove that all relevant aspects of her employment situation were similar to those of the employee with whom she seeks to compare herself. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998). To be similarly-situated in a disciplinary context, the individuals must have dealt with the same supervisor, they must have been subject to the same standards, and they must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for that conduct. *Id.* (quoting *Mitchell,* 964 F.2d at 583); *Smith v. Leggett Wire Co.,* 220 F.3d 752, 762 (6th Cir. 2000). The determination of whether the plaintiff and another employee shared the same supervisor must be made "on a case-by-case basis and does not depend entirely on whether the two shared the same immediate supervisor." *Barry v. Noble Metal Processing, Inc.*, 276 Fed. Appx. 477, 481 (6th Cir. 2008) (citing *McMillan v. Castro,* 405 F.3d 405, 414 (6th Cir. 2005)). "[I]n many instances, the term 'supervisor' should be construed broadly to include cases where both employees' situations were handled by the same 'ultimate decision-maker.'" *Id.* (citing *McMillan,* 405 F.3d at 414). Accordingly, a plaintiff and a comparable employee who are directly supervised by different individuals may still be similarly situated if the same member of management disciplined both of them. *Id.* (citing *McMillan,* 405 F.3d 405; *Seay v. Tenn. Valley Auth.,* 339 F.3d 454, 459 (6th Cir. 2003)).

"[T]he weight to be given to each factor can vary depending upon the particular case." *Johnson v. Kroger Co.,* 319 F.3d 858, 867 (6th Cir. 2003). The ultimate question is whether employees involved in acts of "comparable seriousness" were nonetheless retained. *Clayton,* 281 F.3d at 611 (citing *McDonald v. Santa Fe Transp. Co.,* 427 U.S. 273, 283 n.11 (1976)).

The employer is entitled to summary judgment if the plaintiff does not establish a prima

facie case. If the plaintiff establishes a prima facie case, the employer can overcome the prima facie case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802. If the employer carries its burden, the plaintiff must show that the reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.* at 804.

The Sixth Circuit has categorized different evidentiary bases for three types of pretext showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the employer's decision; or 3) the reasons were insufficient to warrant the decision. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross,* 129 S.Ct. 2343. The first type of showing consists of evidence that the reason offered for the plaintiff's discharge never happened, *i.e.*, the reason is factually false. *Id.* The third showing ordinarily consists of evidence that other employees, particularly those outside the protected class, were not discharged even though they engaged in conduct substantially identical to that which purportedly motivated the plaintiff's discharge. *Id.* If the plaintiff establishes the first or third showing, a permissive inference of discrimination arises. *Id.* For the second showing, where the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal, the plaintiff must introduce additional evidence of discrimination because the reasons offered by the defendant are not directly challenged and therefore do not bring about an inference of discrimination. *Id.*

The Sixth Circuit has cautioned that *Manzer's* three-part test is not to be applied in a formalistic manner. *See Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009).

12

Rather, the court must bear in mind that "[p]retext is a commonsense inquiry: did the employer

fire the employee for the stated reason or not?" *Id.* The court must ask whether the plaintiff has

produced evidence that casts doubt on the employer's explanation and, if so, how strong the

evidence is. *Id.* The 6th Circuit in *Chen* explained,

> At the summary judgment stage, the issue is whether the plaintiff has produced
> evidence from which a jury could reasonably doubt the employer's explanation.
> If so, her prima facie case is sufficient to support an inference of discrimination
> at trial. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993). But summary
> judgment is proper if, based on the evidence presented, a jury could not
> reasonably doubt the employer's explanation. *See Reeves v. Sanderson Plumbing
> Prod., Inc.,* 530 U.S. 133, 148 (2000). ("[A]n employer would be entitled to
> judgment as a matter of law if the record conclusively revealed some other,
> nondiscriminatory reason for the employer's decision, or if the plaintiff created
> only a weak issue of fact as to whether the employer's reason was untrue and
> there was abundant and uncontroverted independent evidence that no
> discrimination had occurred.").

*Id.*

A plaintiff must allege more than a dispute over the facts upon which her discharge was

based in order to establish pretext. *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-494 (6th Cir.

2001). She must put forth evidence that demonstrates the employer did not "honestly believe"

in the proffered nondiscriminatory reason for its adverse employment action. *Id.* (citing *Smith v.

Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998)). An employer has an honest belief in its

nondiscriminatory reason for discharging the employee "where the employer reasonably relied

'on the particularized facts that were before it at the time the decision was made.'" *Majewski v.

Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (citing *Chrysler Corp.*,

155 F.3d at 807). In determining whether an employer "reasonably relied on the particularized

facts then before it," it is not necessary that "the decisional process used by the employer be

optimal or that it left no stone unturned." *Braithwaite*, 258 F.3d at 493 (quoting *Chrysler Corp.*,

155 F.3d at 807) "Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.* (citing *Chrysler Corp.*, 155 F.3d at 807). As long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect. *Majewski*, 274 F.3d at 1117 (citing *Chrysler Corp.*, 155 F.3d at 806).

One way for the plaintiff to demonstrate pretext is to show that the "asserted business judgment was so ridden with error that defendant could not honestly have relied upon it." *Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc) (citing *In re Lewis*, 845 F.2d 624, 633 (6th Cir. 1988)). The court may not substitute its judgment for that of the employer but must simply evaluate "whether the employer gave an honest explanation of its behavior." *Hedrick v. Western Reserve Care System,* 355 F.3d 444, 462 (6th Cir. 2004) (citations omitted).

The court may consider on summary judgment witness statements contained in an investigative report "not to prove their truth, . . . but to demonstrate the state of mind and motive of Defendant's managers in discharging Plaintiff." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598 (6th Cir. 2007) (quoting *Haughton v. Orchid Automation,* 206 Fed. Appx. 524, 532 (6th Cir. 2006)).

Discriminatory remarks can constitute probative evidence of pretext. *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 393 (6th Cir. 2009) (citing *Ercegovich,* 154 F.3d at 356-57). This is true even when the remarks are made by a non-decisionmaker or when they fail to coincide precisely with the particular timeframe surrounding the events giving rise to the claim. *Id.*

14

(citing *Ercegovich*, 154 F.3d at 356). To determine the significance of discriminatory remarks, the court must consider the factors affecting their probative value, including "the declarant's position in the [employer's] hierarchy, the purpose and content of the statement, and the temporal connection between the statement and the challenged employment action, as well as whether the statement buttresses other evidence of pretext." *Id*. (citing *Ercegovich*, 581 F.3d at 357) (internal quotation marks and citations omitted).

## 2. Resolution

Plaintiff has established a prima facie case of discrimination on account of her national origin. Defendant does not dispute that plaintiff is Russian-born, she was qualified for her position, she was terminated, and she was replaced by someone outside of the protected class.

Defendant alleges that plaintiff cannot establish a prima facie case of gender or age discrimination because she was not replaced by a substantially younger female. Defendant alleges that although two females ages 30 and 54 temporarily assumed the role of lead teacher for plaintiff's pre-kindergarten class, the individual who ultimately replaced her on a permanent basis was Sandi Boehn, age 35.

Plaintiff does not dispute that because Boehn is only six years her junior, she cannot satisfy the fourth prong of a prima facie case of age discrimination under the ADEA based on her replacement by Boehn. *See Grosjean*, 349 F.3d at 340. *Grosjean* does not, however, preclude plaintiff from establishing that she was replaced by a substantially younger individual for purposes of establishing a prima facie case of age discrimination under Ohio law. Moreover, plaintiff can establish a prima facie case of age discrimination under both the ADEA and Ohio law so long as she can show that a substantially younger, similarly-situated individual was

15

treated more favorably than she was.

Plaintiff argues that she can establish a prima facie case of age and gender discrimination based on the more favorable treatment defendant afforded to Rusty Ayers, a substantially younger male. She alleges that Ayers engaged in conduct that was of comparable seriousness to the conduct in which she purportedly engaged, but defendant did not terminate him. As explained below, the Court finds there is sufficient evidence to establish a prima facie case of gender and age discrimination on this basis.

It is undisputed that in February of 2005, after they had returned from a field trip, Ayers and another teacher left a sleeping student unattended in the school van for a period of time until they eventually did a headcount and discovered the child was still in the van. Jeffrey Roby depo., pp. 47-51; Bonnie Roby depo., pp. 18-20. There is no doubt that defendant considered the acts of Ayers and plaintiff to be of comparable seriousness. At her deposition, Bonnie Roby characterized Ayers' conduct as "grossly negligent." B. Roby depo., p. 19. Roby testified that the child "could have been seriously injured and harmed" and possibly even "kidnapped," and she conceded that the child who was in the van was in "greater peril" than the child plaintiff allegedly pushed. *Id.*, pp. 19-20. Jeffrey Roby testified at his deposition that plaintiff and Ayers' actions were "equally serious." J. Roby depo., p. 55. In fact, defendant deemed the matter of the child left on the van sufficiently serious that it reported the incident to an outside agency and sent a notice home to parents regarding the incident. J. Roby depo., p. 48; B. Roby depo., p. 21.

Despite the admittedly serious nature of Ayers' conduct, defendant did not terminate him. Defendant instead suspended him for a brief period of time without pay and placed him on

16

probation for one year. J. Roby depo., p. 48; B. Roby depo., pp. 21-22. Defendant attempts to explain the discrepancy in its treatment of Ayers and plaintiff by claiming that (1) Ayers' conduct was not deliberate whereas plaintiff's conduct was, and (2) Bonnie Roby was responsible for the van incident because defendant did not have "all the right policies and procedures in place." B. Roby depo., pp. 22-23. Bonnie Roby conceded, however, that she had no reason to suspect that plaintiff deliberately wanted to harm the boy she allegedly pushed and, to her knowledge, he was not hurt. *Id.*, pp. 27-28. Moreover, a jury could reject as unworthy of credence her explanation that she, not Ayers, was responsible for conduct which Roby herself characterized as "grossly negligent." A reasonable jury could also question whether defendant honestly believed plaintiff's conduct was deliberate when it allowed her to stay in the classroom following the incident and had her report to work the following day.

Defendant has not identified any other differentiating or mitigating circumstances that would distinguish its treatment of plaintiff and Ayers. Defendant points out that Moore was not employed by it when the van incident occurred, but it is clear from the deposition testimony that Jeff Roby and Bonnie Roby, not Moore, were the final decisionmakers in each case. Jeff Roby testified that he and Bonnie made the final decision not to terminate Ayers and Bonnie testified that she and her husband made the decision to terminate plaintiff. J. Roby depo., p. 49; B. Roby depo., p. 10. Based on these facts, plaintiff has established a prima facie case of age and gender discrimination on the basis of dissimilar treatment of similarly-situated employees.

Defendant has articulated a legitimate, nondiscriminatory reason for plaintiff's termination. Defendant claims it terminated plaintiff because she had inappropriate contact with a student at the school, which was in violation of its employment policies and manual and which

17

warranted termination. Defendant asserts that plaintiff has no evidence to show that its articulated reason is false and was a pretext for intentional discrimination because of national origin, gender or age. The Court disagrees and finds for the reasons set forth below that plaintiff has come forward with sufficient evidence to enable a jury to reasonably doubt defendant's explanation and find that it was a pretext for unlawful national origin, gender and age discrimination. *See Chen*, 580 F.3d at 400.

First, as explained above, there is evidence that another employee outside of the protected classes, Ayers, was not discharged even though he engaged in conduct that was comparably serious to that which purportedly motivated plaintiff's discharge. In addition to the van incident, plaintiff relies on defendant's failure to discipline Ayers for allegedly physically abusing her son Michael in April 2007 as evidence of pretext. Defendant argues that it could not have disciplined Ayers for this conduct because the complaint was never substantiated by the outside authorities who investigated it. Defendant, however, was not precluded from conducting its own investigation into an allegation of physical abuse of a child at one of its centers by its own employee. Defendant did not do so, despite professing to have in place at the time a policy of "zero tolerance" for physical abuse of children. Defendant also allowed Ayers to continue to have contact with children, other than those in Michael's classroom, while the complaint against him was pending. *See* J. Roby depo., pp. 43-44. Defendant's very different handling of two reports of physical abuse of a child and inappropriate contact with a child is probative evidence of pretext.

Second, although the Court cannot second-guess an employer's business judgment, *see Wexler*, 317 F.3d at 576, the circumstances surrounding the investigation of the incident in

18

plaintiff's classroom could cause a jury to question Moore's credibility and defendant's true motivation for the termination decision. Moore claims that she suspended plaintiff for three days so that she could conduct interviews and "find out other things." Moore depo., p. 52. Moore also testified, however, that she concluded plaintiff should be terminated after talking only to Tincher, which she had done on July 11, 2008, prior to suspending plaintiff; she did not recall having any substantive conversations with anyone regarding plaintiff between July 11 and July 15, 2008, the date of plaintiff's termination; and she conducted no additional investigation between July 10th and 15th. *Id*., pp. 23, 31, 47, 59-60, 63. In addition, Moore gave no consideration to the account of Sanford, the only witness who was present in the room during the entire incident. Moore claimed at her deposition that Sanford told her that she had not witnessed the incident, but her testimony conflicts with Sanford's account of what she observed. *See* Moore depo., pp. 32-34; Sanford depo., pp. 42-48; depo. exhs. 1, 2. A reasonable jury could doubt Moore's testimony based on Sanford's deposition testimony and the information Sanford provided in support of plaintiff's claim for unemployment benefits. *See* Sanford depo. exhs. 1, 2.

Third, plaintiff's allegations that Moore repeatedly made disparaging comments regarding her Russian origin buttress a finding a pretext by casting doubt on the legitimacy of the proffered reason for her discharge. Plaintiff alleges that she encountered Moore, who was responsible for oversight of students in consultation with the Directors, every time Moore visited the school. She claims that Moore told her that she should return to Russia where she belonged and that she was not welcome in the United States, repeatedly admonished her that the way she spoke, while it might be appropriate in Russia, was not appropriate in the United States,

and stated that she could not understand how plaintiff, with her heavy Russian accent, could work with kids. Given Moore's role in the termination decision, and the fact that plaintiff has introduced other evidence of pretext, a jury is entitled to take the remarks into account when determining whether the reason given by defendant for the termination decision is pretextual. *See Risch*, 581 F.3d at 393.

In sum, plaintiff has produced sufficient evidence to allow a jury to reasonably doubt defendant's explanation for her termination and to find that it was a pretext for discrimination. Defendant therefore is not entitled to summary judgment on her national origin, age and gender discrimination claims.

## B. Disability Discrimination Claims

### 1. Applicable Law

The ADA prohibits an employer from discriminating against a "qualified individual" on the basis of a disability. 42 U.S.C. § 12112(a); *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir. 1997). A "qualified individual" means "an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual with a disability holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). Ohio Rev. Code § 4112.02 makes it an unlawful discriminatory practice "[f]or any employer, because of the . . . disability . . . of any person, to discharge without just cause . . . that person . . ." The analysis of a claim under the ADA and § 4112.02 is the same, *see Kleiber v. Honda of America Mfg., Inc.,* 485 F.3d 862, 872 (6th Cir. 2007), and the case law regarding claims brought under the ADA is generally applicable to claims brought under the Ohio statute.

*See Wooten v. Columbus, Div. of Water,* 91 Ohio App.3d 326, 334, 632 N.E.2d 605, 610 (1993). Although the ADA was amended by the ADA Amendments Act of 2008, which took effect on January 1, 2009, Pub.L. No. 110-325, 122 Stat. 3553, the Act is not relevant to plaintiff's claims because it does not apply retroactively to conduct occurring before the Act became effective. *See Milholland v. Sumner County Bd. of Educ.,* 569 F.3d 562, 565 (6th Cir. 2009).

In order to state a claim of disability discrimination under the pre-amended version of the ADA, the plaintiff must demonstrate "(1) that she is a disabled person within the meaning of the [statute], (2) that she is qualified to perform the essential functions of her job with or without reasonable accommodation, and (3) that she suffered an adverse employment decision because of her disability." *McKay,* 110 F.3d at 371.

An individual is considered "disabled" under the ADA if she:

 (A) [has] a physical or mental impairment that substantially limits one or more
 of the major life activities of such individual;
 (B) [has] a record of such [an] impairment; or
 (C) [is] regarded as having such an impairment.

42 U.S.C. § 12102(1). Ohio Rev. Code § 4112.01(A)(13) defines a disability as

 a physical or mental impairment that substantially limits one or more major life
 activities, including the functions of caring for one's self, performing manual
 tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a
 record of a physical or mental impairment; or being regarded as having a physical
 or mental impairment.

An individual may be regarded as disabled if (1) the employer mistakenly believes that she has a physical impairment that substantially limits a major life activity, or (2) an employer mistakenly believes that an actual, nonlimiting impairment substantially limits a major life activity. *Sutton,* 527 U.S. at 489.

The term "substantially limits" is defined under the regulations governing the ADA to

21

mean

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The regulations governing the ADA define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The regulations set forth the following factors to be considered in determining whether an individual is "substantially limited" in a major life activity:

> (i) The nature and severity of the [claimant's] impairment;
> (ii) The duration or expected duration of the impairment; and
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

Not every impairment qualifies as a disability protected by the anti-discrimination laws. *Daugherty v. Sajar Plastics, Inc.,* 544 F.3d 696, 703 (6th Cir. 2008) (citing *Toyota Motor Mfg., Ky., Inc. v. Wms.,* 534 U.S. 184, 195 (2002); *Bryson v. Regis Corp.,* 498 F.3d 561, 575 (6th Cir. 2007)). The law predating the ADA Amendments Act of 2008 requires that the terms "substantially limits" and "major life activities" be "interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota,* 534 U.S. at 197. In determining whether an individual is disabled, an individualized inquiry must be made and measures that mitigate an individual's impairment must be taken into account. *Cotter v. Ajilon Servs., Inc.,* 287 F.3d 593, 598 (6th Cir. 2002) (citing *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 483 (1999)).

## 2. Resolution

Plaintiff does not claim that she is actually disabled, and she concedes that she has no medical evidence of a disability. She instead claims that defendant perceived her to be disabled as a result of a wrist injury she sustained during the episode that led to her termination. The only evidence she offers in support of this allegation is that the injury was visible to defendant, she notified defendant of the injury and requested to see a doctor, and she requested workers' compensation benefits for the injury. She argues that the issue of whether defendant perceived her to be disabled is a jury question.

Upon careful consideration of the parties' arguments and the evidence of record, the Court finds that plaintiff has not come forward with evidence to support a finding that defendant perceived her as disabled. Plaintiff erroneously claims that defendant need not have had in mind that she is substantially limited in a major life activity in order to have perceived her as disabled. She claims that she need only show that defendant considered her to be disabled from a common sense point of view. This is not the law. Plaintiff must demonstrate that defendant held the mistaken belief that she is disabled within the meaning of the anti-discrimination laws. *See Mahon v. Crowell,* 295 F.3d 585, 592 (6th Cir. 2002) (citing *Ross v. Campbell Soup Co.,* 237 F.3d 701, 709 (6th Cir. 2001)); *see also Spees v. James Marine, Inc.,* 617 F.3d 380, 397-399 (6th Cir. 2010) (evaluating whether the employer viewed the plaintiff's impairment as substantially limiting the major life activity of working within the framework of the regulations accompanying the ADA). She has failed to make this showing. Plaintiff has presented evidence that defendant knew she was injured, but an injury does not necessarily equate to a disability under the anti-discrimination statutes. *See Daugherty,* 544 F.3d at 703. She has not produced

23

additional evidence to show that defendant considered her injury to be disabling within the meaning of the anti-discrimination laws. Plaintiff relies on the fact that defendant was aware she had applied for workers' compensation benefits to establish it regarded her as disabled, but this fact is not material to her disability discrimination claims because it is undisputed she did not apply for benefits until after she had been terminated. Because plaintiff has offered no other evidence that defendant viewed her impairment as substantially limiting a major life activity, the Court concludes as matter of law that she is not a disabled person within the meaning of either the ADA or Ohio Rev. Code Ch. 4112. She therefore cannot establish an essential element of her disability discrimination claims. Defendant is entitled to summary judgment as a matter of law on these claims.

**C. Public Policy Claim**

Plaintiff alleges that defendant violated Ohio public policy by terminating her in retaliation for reporting Ayers' alleged abuse of her son Michael to 241-KIDS as mandated by Ohio Rev. Code § 2151.421, which requires officials and certain employees to report suspected child abuse. Defendant claims that there is no causal connection between plaintiff's termination and the allegations against Ayers. Defendant argues that temporal proximity is lacking as plaintiff made those allegations in April 2007 and defendant terminated her over a year later in July 2008.

Ohio law recognizes the tort of wrongful discharge in violation of public policy as an exception to the employment-at-will doctrine. The tort requires four elements: (1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) dismissing employees under

24

circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) the employer lacked overriding legitimate business justification for the dismissal (the overriding justification element). *Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653, 657-58 (1995). The clarity and jeopardy elements are issues of law for the court to decide while the jury decides factual issues relating to the causation and overriding justification elements. *Id.* at 70, 652 N.E.2d at 658.

Plaintiff relies on *Powers v. Springfield City Schools*, No. 98-CA-10, 1998 WL 336782 (Ohio App. 2 Dist. 1998) (unpublished decision) to establish the first element of her claim. *Powers* states that Ohio Rev. Code § 2151.421(A)(1)(a) "reflects a clear public policy in favor of reporting suspected child abuse that is sufficient to overcome the employment at will doctrine." *Id.,* at *4. Defendant acknowledges that § 2151.421 contains a public policy that suspected child abuse must be reported to the appropriate agency. The Court finds that the statute establishes a clear public policy in favor of reporting suspected child abuse. The Court also finds that dismissing an employee for reporting suspected child abuse by a daycare center employee would jeopardize that policy. Thus, the first two elements of plaintiff's breach of Ohio public policy claim are satisfied as a matter of law.

The remaining question is whether plaintiff has produced sufficient evidence to raise genuine issues of material fact on the causation and overriding justification elements. Defendant denies that plaintiff's reporting of the alleged physical abuse of her son by Ayers was a factor in the decision to terminate her. Defendant correctly asserts that the two events are too remote in time for plaintiff to rely solely on temporal proximity to establish causation. Plaintiff

25

does not rely only on temporal proximity to establish her claim, however. Rather, there is other evidence which supports an inference that plaintiff's complaint against Ayers was a factor in the termination decision. There is deposition testimony that Moore was unhappy with plaintiff for making the complaint and for attempting to gather information on her own and that Moore had threatened to terminate plaintiff if she did not discontinue her efforts. Plaintiff's depo., p. 65. Moore is the same individual who concluded that plaintiff should be terminated for her alleged misconduct without conducting any further investigation following the suspension. In addition, Moore testified that she believes it was Ayers, the individual plaintiff had reported for child abuse, who reported to Moore that plaintiff had acted inappropriately. Moore depo., p. 43. These circumstances, coupled with the remaining evidence of record, are sufficient to raise a question of fact on the causation element as to whether plaintiff's complaint against Ayers was a factor in the termination decision. Finally, material issues of fact exist as to the overriding justification element of plaintiff's public policy claim. For the reasons stated in connection with plaintiff's discrimination claims, the evidence of record presents issues as to whether defendant had an overriding legitimate business justification for plaintiff's dismissal. In light of these issues, summary judgment on the breach of public policy claim is not appropriate.

## VI. Conclusion

For these reasons, the court hereby RECOMMENDS that defendant's motion for summary judgment be GRANTED as to plaintiff's claims for disability discrimination under the ADA and Ohio law (Counts VII, VIII) and for defamation (Count IX) and that the motion be DENIED as to the remaining claims.

Date: 12/2/2010

Karen L. Litkovitz
United States Magistrate Judge

27

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

IRINA CHAMBERLAIN,

      Plaintiff,

                              Case No. 1:09-cv-751

    v.

                              Weber, J.
                              Litkovitz, M.J.

CONSOLIDATED LEARNING
CENTERS, INC.,

      Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

28